**In re John TALMAGE and Barbara Talmage, Debtors.**

**COMPREHENSIVE ACCOUNTING CORPORATION, Plaintiff,**

v.

**John TALMAGE, et al, Defendants.**

Bankruptcy No. B83–00544.

Adv. No. B83–0454.

United States Bankruptcy Court, N.D. Ohio.

Dec. 23, 1988.

David R. Mayo, Jerome Leiken, Benesch, Friedlander, Coplan & Aronoff, Cleveland, Ohio, for plaintiff.

Richard A. Baumgart, Dettelbach & Sicherman Co., L.P.A., and R. Michael O'Neal, Malitz and Barker, Cleveland, Ohio, for defendants.

MEMORANDUM OPINION

DAVID F. SNOW, Bankruptcy Judge.

This case is again in this Court on remand from the judgment of the Sixth Circuit Court of Appeals filed March 27, 1985 and the opinion of that court entered on the same date, which is reported at 758 F.2d 162 (the "Opinion"). For reasons that are not altogether clear, this case has languished since the remand and came on for hearing on December 12, 1988, nearly three years and nine months after the date of the Opinion. This will be the fourth decision in this case. The first was rendered by this Court on July 15, 1983. Its opinion and order were appealed to the District Court which entered an order affirming this Court's decision with minor modifications

on February 2, 1984. On appeal, the Court of Appeals affirmed the order of the District Court in part and reversed it in part.

In brief, the defendants, John Talmage and Barbara Talmage (collectively the "Talmages"), had through their corporation, John Talmage, Incorporated, entered into various agreements with the plaintiff, Comprehensive Accounting Corporation ("CAC"), relating to their conducting an accounting business (the "Agreements"). In accordance with the Agreements, the Talmages purchased from CAC the right to provide accounting and bookkeeping services to customers ("Accounts") who had been solicited or provided to them by CAC. The Agreements granted to CAC various security interests in respect of the Accounts and included a covenant restricting the Talmages' right to service the Accounts following the termination of the Talmages' relationship with CAC (the "Covenant not to Compete").

In 1982 the Talmages defaulted in the repayment of their obligations to CAC and the Agreements were subsequently terminated. On or about February 28, 1983, the Talmages filed a joint petition under Chapter 7 of the Bankruptcy Code. In April, 1983, CAC filed its complaint for a temporary restraining order, preliminary and permanent injunction and for relief from stay. The issues raised in the courts and finally decided by the Court of Appeals were:

(a) the nature and extent of CAC's security interest in and relating to the Accounts; and

(b) the enforceability of the Covenant not to Compete.

The Covenant not to Compete continues to be at issue between the parties and is set forth in full below as it appears in the Opinion:

*Agreement Not To Compete.* During the time Licensee [Talmage] is associated, and for a period of one (1) year after its status as a Licensee is terminated, whether by reason of lapse of time, default in its performance, or any other case or contingency Licensee or Associate will not, in any capacity directly or indirectly engage in the following activities:

1. Perform bookkeeping services for any client then currently serviced or for one year after it has ceased to be serviced by COMPREHENSIVE or another Licensee.

2. Make use of any trade secrets of COMPREHENSIVE for the mass solicitation of accounts or use of mass media as opposed to personal contact.

The Court of Appeals held that the Covenant not to Compete was enforceable and reversed the decision of the District Court to the contrary. Further, it held that CAC's security interests were enforceable and in this respect affirmed the decision of the District Court. It also required that the Talmages turn over copies of certain books and records to CAC. Set forth below is the dispositive language from pages 166–67 of the Opinion:

We also conclude that the restraint here involved considering all the circumstances, including the posture of the parties, is not substantially greater than necessary to protect the legitimate interest of CAC in enforcement. We construe the covenant not to compete, as CAC itself argues that it should be construed, not for an indeterminate term but for a one year term only, and conclude that such time limitation is reasonable, as are the other constraints on Talmage for that period. The covenant was clearly ancillary to a license agreement and a sale, transfer or assignment of accounts, and is enforceable. In this respect, then, we reverse the decision of the district court that the covenant was not enforceable as to Talmage. We affirm the district court decision, however, that CAC has a valid and enforceable security interest in accounts receivable, contract rights and work papers of Talmage. In addition, we hold that Talmage should reasonably be called upon under the agreement with CAC to turn over copies of books and records pertaining to clients' accounts that are in Talmage's possession (or in the possession of Talmage, Inc.) The original books and records that may belong to clients, of course, would not be

covered by the security interest, as conceded by CAC.

The Judgment of the Court of Appeals issued as mandate on April 26, 1985 ordered the case remanded to this Court for further proceedings consistent with the Opinion.

At the hearing held on this matter on December 12, 1988, the sole witness called by the plaintiff was Amos T. Finkle, an executive officer of CAC. No witnesses were called by the Talmages. Based upon the pretrial statements and trial briefs of the parties and the testimony of Mr. Finkle as well as the statements by counsel at the hearing, the only issue appears to be the appropriate remedy for the Talmages' breach of the Covenant not to Compete.

Mr. Finkle testified that no request has been made by CAC to acquire any of the papers or other materials in which it has a security interest or which had been ordered to be turned over to it by the Court of Appeals. Counsel for the Talmages indicated that any such materials that existed would be made available to CAC at its request. Mr. Finkle testified, however, that the security and other materials were valueless to it without an order restraining the Talmages from servicing the Accounts. Moreover, CAC made no effort to prove damages for breach of the Covenant not to Compete and its counsel expressly disclaimed any intention to assert a claim for damages. Therefore, the sole issue presented for determination by CAC was whether an injunction was a proper remedy for the Talmages' breach of the Covenant not to Compete. The parties apparently concur that this matter is governed by Illinois law, and it is that law under which the Opinion was decided by the Court of Appeals.

CAC's position is that it is entitled now to an injunction restraining the Talmages from servicing the Accounts in accordance with the Covenant not to Compete and, in connection therewith, introduced into evidence a list of the Accounts at December 30, 1982 comprising 57 Accounts in all. No testimony was presented, however, as to whether or not any or all of these Accounts continue to be serviced by the Talmages or in fact now exist at all. It is CAC's contention that the Opinion mandates an order by this Court restraining the Talmages from servicing such Accounts for the period of one year. It is presumably also its view that such a remedy is appropriate under Illinois law, although it cited no authority from Illinois or any other jurisdiction in support of this proposition. The Talmages, on the other hand, assert that injunction does not now lie for the Talmages' breach of the Covenant not to Compete, and that if there is any remedy at all it is for damages.

One thing at least seems clear. The matter at issue is fashioning a remedy for breach of contract and not enforcing the Covenant not to Compete in accordance with its terms. Although some uncertainty arose in the questioning of Mr. Finkle as to the exact date on which the Talmages were terminated by CAC, such date was no later than early 1983 or at least five and a half years ago. CAC's brief in support of its motion for temporary restraining order and preliminary and permanent injunction filed on April 29, 1983 noted on page 6 that:

> By letter dated July 19, 1982, and again on February 2, 1983, plaintiff terminated the aforesaid agreement, and by virtue of Defendants' execution of the Sales Agreement, with the covenant not to compete, Defendants are barred from servicing any of the client accounts for one year thereafter.

Therefore, it is beyond the power of this or any other court to specifically enforce the Covenant not to Compete. By its terms it expired more than four years ago. The only course open to CAC at this point is to provide the Court the basis for a remedy appropriate to the Talmages' breach. There is nothing in the Opinion which dictates the nature of that remedy. It simply finds that the Covenant not to Compete is valid and enforceable. This Court is necessarily remitted to the law of remedies which, notwithstanding CAC's assertions to the contrary, the Court of Appeals did not pass upon let alone dictate in the Opinion. Consequently, this Court must determine whether an injunction is an appropriate

remedy under the circumstances as they exist at this time. *See McComb v. Goldblatt Bros.*, 166 F.2d 387, 391 (7th Cir. 1948).

Ordinarily the law provides damages to the party injured by a breach of contract. In this case, however, CAC expressly declined to prove damages for the Talmages' breach. It made no effort to determine or to show the revenues received by the Talmages from the Accounts during the one-year period following termination of the Agreements or to present any evidence of its losses occasioned by the Talmages' failure to comply with their contractual obligation. Apart from its assertion that an injunction was mandated by the Court of Appeals, CAC appears to assume that damages would be inadequate or at least not as attractive a remedy as an injunction. However, Mr. Finkle's testimony that CAC had not bothered to determine whether the Talmages continue to service any of the Accounts strongly suggests that CAC is more interested in establishing some sort of principle than in practical redress. This suggestion is strengthened by Mr. Finkle's testimony that CAC has made no effort at any time to recapture the Accounts.

CAC reasons apparently that in view of the validity of the covenant not to compete, this Court and/or the District Court should have granted the injunctive relief prayed for by CAC in 1983. It may be correct in this contention since, as argued in its pleadings filed at the time, courts have generally granted injunctive relief in respect of such covenants on the finding that damages would not be an adequate remedy. Unfortunately, an appropriate remedy at that point geared to the very year during which the Covenant not to Compete was to operate cannot now be transposed to a subsequent period after the issue of the validity of the Covenant not to Compete has been finally determined in the CAC's favor.

■ Injunctive relief is an exceptional remedy not the rule. It is granted only in special circumstances where its compulsory quality is appropriate.

An injunction is an equitable remedy frequently described as the strong arm of equity—an extraordinary remedy to be used sparingly with judicial restraint and due continence, and only in a clear and plain case.

*Miollis v. Schneider*, 77 Ill.App.2d 420, 222 N.E.2d 715, 718 (1966). The injunction has been specifically limited by Illinois law to prevent its use as a punishment. "[I]njunction process was designed to deter, not to punish." *McComb v. Goldblatt Bros.*, 166 F.2d at 390. "The appropriate function of injunction is to afford preventative relief and not to correct injuries already committed." *Goldblatt Bros. v. 63rd & Halsted Realty Co.*, 338 Ill.App. 543, 88 N.E.2d 100, 104 (1949).

CAC's original filings with this Court were premised on the fact that it must have immediate relief and immediate enforcement of the Covenant not to Compete in order to protect its position. Inherent in that appeal was the recognition that the Covenant ran for a limited time and that CAC's remedy of specific enforcement would be rendered moot if not enforced within that time. *See Brook Forest Community Association v. DuPage County Board of Supervisors*, 33 Ill.App.3d 694, 338 N.E.2d 455 (1975) and *Shoal Creek Drainage District v. Gulf Interstate Engineering Co.*, 130 Ill.App.2d 906, 266 N.E.2d 165 (1971). In light of the decisions by the lower courts and the time for appeal, CAC's right to specific performance became moot with the passage of that one-year period, since that ended the ability of this or any other court to specifically enforce that Covenant according to its terms. *See American Sanitary Rag Co. v. Dry*, 346 Ill.App. 459, 105 N.E.2d 133 (1952). In that case the trial court's judgment granting an injunction was reversed by the appellate court where the restrictive covenant had expired by the time the issue reached the appellate court. But the fact that the case is moot insofar as enforcing the Covenant not to Compete by injunction is concerned does not necessarily deprive CAC of a remedy. But where specific enforcement is impossible the remedy for breach of contract must be restorative not punitive.

CAC presented no evidence to suggest that a present restraint on the Talmages

would bear any relation to the injury done it some five years ago. Of necessity then, the injunction imposing such restraint could only be punitive. In this case CAC chose not to seek damages for reasons satisfactory to it, but there is nothing in the record to show that its losses might not have been compensated by a money award. In this case no other remedy appears available. Restitution is not possible, even if it were otherwise available, since CAC made no effort to show that any moneys or other properties are retained by the Talmages which properly belong to it. But the fact that its litigation strategy precludes a money award does not provide this Court a basis for issuing the injunction requested.

Accordingly the Court finds that enjoining the Talmages not to service the Accounts would not be an appropriate remedy for breach of the Covenant not to Compete. Lacking any other basis on which to provide a remedy, the Court awards CAC nominal damages of $1.00 in respect of the Talmages' breach of that Covenant.

IT IS SO ORDERED.